UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH JACKSON, IV ET AL.                    CIVIL ACTION

VERSUS                                       NO. 23-7246

HANCOCK WHITNEY BANK                         SECTION "B"(5)

<u>ORDER AND REASONS</u>

Before the Court are defendant Hancock Whitney Bank's motion to dismiss (Rec. Doc. 7), plaintiffs Joseph Jackson, IV and Love N Loyalty Design Builder, LLC's opposition (Rec. Doc. 17), and defendant's reply (Rec. Doc. 19). For the following reasons,

**IT IS ORDERED** that defendant Hancock Whitney Bank's motion to dismiss (Rec. Doc. 7) is **GRANTED IN PART**, in accordance with this Order. Plaintiffs' claims under Louisiana's Unfair Trade Practices Act and the federal Equal Credit Opportunity Act are **DISMISSED**. Plaintiffs shall file an amended complaint to cure deficiencies in their banking discrimination claims **no later than April 30, 2024.** Failure to amend the complaint will lead to the dismissal of the action.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

After Hancock Whitney Bank's refusal of a checking account to Mr. Jackson for Love N Loyalty Design Builder, LLC ("LNL"), plaintiffs bring suit alleging racial discrimination. *See* Rec. Doc. 1 at 4 ¶19 ("Upon information and belief, Mr. Jackson was refused the ability to open a checking account on his behalf and on behalf of LNL Design Builder due to his race. Specifically, Mr. Jackson is a black African-American."). The allegations arise from three visits over the course of two days by Mr. Jackson to a Hancock Whitney Bank branch in Slidell, Louisiana. *See id.* at 1–3. During the first visit, Mr. Jackson identified his request of opening a business checking account to a branch employee, who was later identified as the branch manager. *Id.* at 2 ¶¶5, 18. The branch

1

manager supplied Mr. Jackson with a list of needed documentation. *Id.* at 2 ¶6. Returning later that day with the requested information, Mr. Jackson contends the branch manager flatly refused his request, as Mr. Jackson "had been denied" an account during his first visit "due to his credit score." *Id.* at 2 ¶¶9, 11. The denial, as well as its basis, puzzled Mr. Jackson: "Mr. Jackson had not previously authorized Hancock Whitney Bank to do a credit inquiry. Further, Mr. Jackson had not provided Hancock Whitney Bank with sufficient information to obtain a credit report." *Id.* at 2 ¶12. This confusion led Mr. Jackson to return to the branch for a third time, the following day. *Id.* at ¶15. Again meeting with the branch manager, Mr. Jackson requested "a written document which listed the denial or the results of his credit report/inquiry." *Id.* at 3 ¶15. Mr. Jackson relays the branch manager was unable to provide documentation or an explanation, other than to retract her previous statement that the denial was based on his credit score and to now assert his denial was based on "another reason." *Id.* at 3 ¶¶16–17. "The Branch Manager was unable to provide any specifics." *Id.* at 3 ¶17.

From the checking account denial, plaintiffs claim to have "suffered economic harm, mental anguish, and general damages." *Id.* at 4 ¶20. As legal bases for his discrimination suit, plaintiffs cite both Louisiana's Unfair Trade Practices Act ("LUTPA") and the federal Equal Credit Opportunity Act ("ECOA"), specifically, and state and federal law prohibiting "banking discrimination," generally. *Id.* at 4 ¶¶21–24. Plaintiffs assert federal jurisdiction through the latter claim. *Id.* at 4 ¶26 ("Jurisdiction is additionally authorized in this Court and judicial district since the Complaint brings forth issues of federal law.").

## II.   LAW AND ANALYSIS

### A.  Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A complaint does not meet the plausibility standard "if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (citing *Twombly*, 556 U.S. at 555).

Although motions to dismiss are evaluated by the content in the complaint, the United States Supreme Court has described the extent of possible evidence: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference,

and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322 (2007) (citation omitted). Of matters that a court may take judicial notice, Federal Rule of Evidence 201 supplies "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). As to the accuracy of the source, the Federal Rules of Evidence also instructs that an official publication by a public authority is self-authenticating. *See* Fed. R. Evid. 902(5). Courts consistently have held official publication includes information contained on a government website. *See Johnson v. City of Shelby, Miss.*, 642 F. App'x 380, 383 (5th Cir. 2016) (citing favorably *Kuba v. Sea World, Inc.*, 428 F. App'x 728, 732 (9th Cir. 2011) (holding that excerpts and hyperlinks from a municipal website were self-authenticating under Rule 902(5)); *U.S. E.E.O.C. v. E.I. DuPont de Nemours & Co.*, No. 03-1605, 2004 WL 2347559, at *2 (E.D. La. Oct. 18, 2004) ("The Court also notes that the webpage is maintained on a government website, and, according to Rule 902(5), 'publications purporting to be issued by public authority' are self authenticating."); *Whitfield v. City of New Orleans*, 431 F. Supp. 3d 818, 823 (E.D. La. 2019) ("A court may also take judicial notice of certain matters, including public records and government websites."). Where authenticated documents are supplied to the court, the court "must take judicial notice if a party requests it[.]" Fed. R. Evid. 201(c)(2). This notice does not convert a motion to dismiss into one for summary judgment. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (citing, in a motion to dismiss context, the now-numbered Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.")); *Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 926 F. Supp. 2d 858, 862 (E.D. La. 2013).

   **B. LUTPA Claim**

Through LUTPA, Louisiana provides a cause of action against "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 1405(A). To succeed, a LUTPA plaintiff must show conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 405 (E.D. La. 2016) (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059). The offending conduct is measured on a case-by-case basis. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). In this assessment, the Fifth Circuit has found an actionable LUTPA claim through "deceptive and unethical undertones" in a breach of contract. *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 482 (5th Cir. 2002). Where actionable conduct is shown, a plaintiff can recover actual damages for "any ascertainable loss of money or movable property." La. Rev. Stat. § 51:1409(A).

Despite its protective statutory language and caselaw application, LUTPA is inapt for plaintiffs' banking discrimination claim. As the first listed exempted entity type, "[a]ny federally insured financial institution, its subsidiaries, and affiliates or any licensee of the Office of Financial Institutions, its subsidiaries, and affiliates" are not subject to the LUTPA scheme. La. Rev. Stat. § 51:1406(1). Hancock Whitney Bank asserts that it qualifies as such an institution, providing as proof its listing on the Federal Deposit Insurance Corporation ("FDIC") website. Rec. Doc. 7-1 at 6 n.1. We take judicial notice of the publication by a public authority, brought to our attention by a party. *See* Fed. R. Evid. 902(5), 201(c)(2). Plaintiffs, moreover, make no argument as to LUTPA's applicability in their opposition to the instant motion, rendering the claim abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citing *Vela v. City of Houston,* 276 F.3d 659, 679 (5th Cir. 2001)) (finding at the motion to dismiss stage plaintiff's

"failure to pursue this claim beyond her complaint constituted abandonment"). Plaintiffs' LUTPA claim must be dismissed.

### C.  ECOA Claim

As a ground for an action against a financial institution, the ECOA prohibits a creditor from discriminating against an applicant "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). To state a claim under the ECOA, a plaintiff "must plausibly allege that (1) each plaintiff was an 'applicant'; (2) the defendant was a 'creditor'; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 705 (5th Cir. 2017) (citation omitted). As relating to a credit transaction, the ECOA scheme defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). An applicant, in turn, is one who applies for a credit "extension, renewal, or continuation." 15 U.S.C. § 1691a(b).

Parties disagree over the presence of a credit transaction in the instant matter. As the Middle District of Louisiana court has noted, "[t]here is a dearth of jurisprudence within the Fifth Circuit" on the ECOA credit transaction issue. *Pullins v. Bank*, No. 19-06, 2020 WL 1450560, at *4 (M.D. La. Mar. 25, 2020). Relying on a ruling from a California district court, the *Pullins* court concluded that cashing a check did not qualify as a credit transaction. *Id.* (citing *Jackson v. Bank of America*, 2017 WL 5635031 (C.D. Calif. Mar. 9, 2017) ("The allegations in the complaint did not show that the bank's conduct had 'any relation to a debt, whether in allowing [p]laintiff to defer payments or incur debt.'"). This conclusion—and its supporting reasoning—aligns with rare Fifth Circuit consideration of the ECOA. *See Robinson v. Veneman*, 124 F. App'x 893 (5th Cir. 2005).

Affirming a district court's grant of summary judgment against plaintiffs' challenge of the Farm Service Agency's valuation of their property, the Fifth Circuit primarily evaluated the agency's action in light of the Administrative Procedure Act. *Id.* at 895. However, the plaintiffs also made a claim against the agency pursuant to the ECOA. Although acknowledging that the property valuation was completed as part of the agency's loan servicing program, the appellate court found the ECOA inapplicable because of "no evidence that the [plaintiffs] ever sought or received credit from the FSA." *Id.* at 896.

Even more pertinently, district court opinions have determined that actions related to checking accounts are not credit transactions for ECOA purposes. *See Myart v. Frost Bank*, No. 19-753, 2020 WL 33599, at *6 (W.D. Tex. Jan. 2, 2020) (closing of bank account); *Rudder v. Herriman*, No. 15-1142, 2015 WL 7075403, at *3 (D. Colo. Nov. 13, 2015) ("A savings or checking account does not fall under [the ECOA] statutory definition of 'credit'."); *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1233 (D. Kan. Oct. 23, 1995) ("The opening of a savings account is not a credit transaction because it is not a right to defer payment of a debt."); *Anderson v. Walker*, No. 05-97, 2006 WL 3335123, at *4 (M.D. Ga. Nov. 16, 2006) ("There is no allegation that the transaction which forms the basis of [plaintiff's] complaint—an intent to open a corporate checking account—involved the extension, renewal or continuation of credit. [Plaintiff's] allegations are insufficient to bring his claim within the Equal Credit Opportunity Act.").

Plaintiffs allege Mr. Jackson went to the Hancock Whitney Bank branch "to open a checking account and/or a business checking account for LNL Design Builder." Rec. Doc. 1 at 2 ¶5. Plaintiffs encourage consideration of a credit transaction not through the type of banking request made but through the stated reason for its denial: "[I]t is the substance of the subject rejection which activates the applicability of the ECOA." Rec. Doc. 17 at 1. To plaintiffs, because

the branch manager cited Mr. Jackson's credit score as the reason for his denial the "statements demonstrate a credit transaction as defined by the act." *Id.* Plaintiffs' assertion is unsupported by the statutory text and applicable caselaw. An application for a checking account does not constitute "the extension, renewal, or continuation of credit." 15 U.S.C. § 1691a(b). As such, plaintiffs' ECOA claim must be dismissed.

### D.  Banking Discrimination Claims

Plaintiffs also make more generalized state and federal law claims of "banking discrimination." Rec. Doc. at 4 ¶¶22, 24. In moving for their dismissal, Hancock Whitney Bank argues these discrimination causes of action are made "without pointing to the specific laws that have been violated and without any specific factual support for such discrimination claims." Rec. Doc. 7-1 at 9. Bearing the mere label of "banking discrimination," these causes of action are threadbare and conclusory, thereby failing to state a plausible claim. Unlike plaintiffs' LUTPA and ECOA claims, however, they may be actionable if more specifically pled with factual allegations to plausibly support a cause of action. Plaintiffs seemingly admit as much, identifying in their opposition to dismissal "the sole issue [to be] whether it is recoverable as a private right of action under the ECOA or other law." Rec. Doc. 17 at 3. Further, as an alternative to denial of defendant's instant motion, plaintiffs request leave to amend their complaint to remedy any identified deficiencies. *Id.* at 5.

As Federal Rule of Civil Procedure 15 instructs of complaint amendments, courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In application of Rule 15, the Fifth Circuit has observed "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will

avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In evaluating the propriety of an amendment, a court should assess "a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). Here, plaintiffs are permitted to amend their complaint to state a plausible cause of action for banking discrimination.

New Orleans, Louisiana this 17th day of April, 2024

SENIOR UNITED STATES DISTRICT JUDGE